IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BOBBIE J. WADERICH,

               Plaintiff,

                                 Civil No. 08-6146-ST

               v.                          OPINION AND
                                            ORDER

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

               Defendant.
_____

STEWART, Magistrate Judge:

     Plaintiff, Bobbie J. Waderich ("Waderich"), seeks judicial review of the Social Security

Commissioner's final decision denying her application for Supplemental Security Income

("SSI") under Title XVI of the Social Security Act.  This court has jurisdiction under 42 USC

1 - OPINION AND ORDER

§ 405(g).  All parties have consented to entry of final judgment by a Magistrate Judge in accordance with FRCP 73 and 28 USC § 636(c).

For the following reasons, the Commissioner's decision is AFFIRMED and the case is dismissed.

## BACKGROUND

Born in 1953, Waderich has a seventh-grade education.  Tr. 100, 114.[1]  She last worked as a gas station attendant between June and August 1990.  Tr. 108.

Waderich alleges disability since December 1, 1994, due to emphysema.  Tr. 107.  The Commissioner denied Waderich's applications initially and upon reconsideration.  Tr. 83-92.  An Administrative Law Judge ("ALJ") held a hearing on October 21, 2004 and subsequently found Waderich not disabled.  Tr. 378-87, 619-81.  The Appeals Council remanded the matter to the ALJ for a second hearing, which was held on November 12, 2006.  Tr. 396-99, 682-754.  On March 12, 2007, the ALJ again found Waderich not disabled.  Tr. 21-39.  The Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  Tr. 9-11.

## DISABILITY ANALYSIS

In construing an initial disability determination under Title XVI of the Act, the Commissioner engages in a sequential process encompassing between one and five steps.  20 CFR § 416.920; *Bowen v. Yuckert*, 482 US 137, 140 (1987).

///

---

[1]  "Tr." citations refer to pages in the official transcript of the administrative record filed with the Commissioner's Answer on October 15, 2008 (docket #11).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, the claimant is not disabled.  20 CFR § 416.920(a)(4)(i).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month duration requirement.  20 CFR §§ 416.909; 416.920(a)(4)(ii).  If the claimant does not have such a severe impairment, then she is not disabled.  *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations.  20 CFR § 416.920(a)(4)(iii).  If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments.  20 CFR § 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant work.  20 CFR § 416.920(a)(4)(iv).  If the claimant cannot perform past relevant work, then at step five, the ALJ must determine if the claimant can perform other work in the national economy.  20 CFR § 416.920(a)(4)(v); *Yuckert*, 482 US at 142; *Tackett v. Apfel*, 180 F3d 1094, 1099 (9th Cir 1999).

The initial burden of establishing disability rests upon the claimant.  *Tackett*, 180 F3d at 1098.  If the process reaches step five, the burden shifts to the Commissioner to show that jobs

exist in the national economy in the claimant's RFC.  *Id.*  If the Commissioner meets this burden,

then the claimant is not disabled.  20 CFR § 416.920(a)(4)(v).

## THE ALJ'S FINDINGS

At step two, the ALJ found that Waderich has the severe impairments of chronic

obstructive pulmonary disease ("COPD"), obstructive sleep apnea, mild pulmonary

hypertension, degnerative disc disease, mild scoliosis and mild spondylosis of the lumbar spine,

adjustment disorder with depressed mood, dysthymia, borderline intellectual functioning with

adequate adaptive functioning, and cannabis abuse and dependence.  Tr. 23.  The ALJ found at

step three that these impairments did not meet or equal a listed impairment.  Tr. 23-28.

Regarding Waderich's credibility, the ALJ found her "statements concerning the intensity,

persistence and limiting effects of [her] symptoms not entirely credible."  Tr. 30.  The ALJ found

that Waderich had the RFC to perform the following limited range of light work:

> She can lift no more than 20 pounds at a time, and lift and/or carry
> up to 10 pounds frequently.  She can walk and/or stand for
> approximately six hours of an eight-hour workday.  She can sit for
> approximately six hours of an eight-hour workday.  She would
> need to change positions from sitting to standing occasionally
> throughout the workday to alleviate pain or discomfort.  She
> should not climb ladders, ropes, or scaffolds.  She can occasionally
> reach overhead, but not on a repetitive or frequent basis.  She
> should avoid concentrated exposure to fumes, gases, dusts, and
> odors.  She can perform unskilled work which needs little or no
> judgment to do simple duties that can be learned on the job in a
> short period of time.  She can perform tasks such as making or
> counting back change.  She can perform jobs that are repetitive in
> nature, not requiring the ability to perform intensive mathematical
> calculations.

Tr. 28-29.

At step four, the ALJ found that Waderich had no past relevant work and thus no

transferable skills.  Tr. 37.  Finally at step five, drawing upon the vocational expert's testimony,

the ALJ found that Waderich's RFC enabled her to perform work in the national economy as an assembler or cashier.  Tr. 38.  The ALJ therefore found Waderich not disabled.  Tr. 38-39.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 USC § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004).  This court must weigh the evidence that supports and detracts from the ALJ's conclusion.  *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998).  The reviewing court may not substitute its judgment for that of the Commissioner.  *Id*, citing *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 882 (9th Cir 2006); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).  Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading.  *Id*; *see also Batson*, 359 F3d at 1193.

## ANALYSIS

Waderich contends the ALJ erroneously rejected the opinions of the examining psychologist,  Dr. Judith Eckstein, and the treating physician, Dr. Heather McRee.  Waderich further contends that the ALJ should have found that she meets Listing 12.05C, or, alternatively, should have found her disabled at step five in the proceedings.

## I.    Medical Source Statements

### A.    Legal Standard

The ALJ must generally accord greater weight to a treating physician's opinion than an examining physician's opinion and, in turn, accord greater weight to an examining physician's

opinion than to a reviewing physician's opinion. *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995). The ALJ must give specific, legitimate reasons supported by substantial evidence for rejecting a controverted opinion from a treating or examining physician and "clear and convincing reasons" for rejecting an uncontroverted opinion. *Bayliss v. Barnhart*, 427 F3d 1211, 1216 (9th Cir 2005). A reviewing physician's opinion may not constitute substantial evidence justifying rejection of a treating or examining physician's opinion unless it is "supported by other evidence of the record and . . . consistent with it." *Lester*, 81 F3d at 831. The opinion of the treating physician is not necessarily conclusive to the ultimate issue of disability, which is reserved for the Commissioner. 20 CFR § 416.927(c)(1).

      **B.**     **Examining Psychiatrist and Medical Expert**

Waderich asserts that the ALJ erroneously rejected the diagnosis by the examining psychologist, Dr. Eckstein, of mild mental retardation with associated mental deficiencies and gave greater weight to the opinion of the medical expert, Dr. Bernard Peters.

      **1.**     **Examining Psychologist Dr. Eckstein**

Dr. Eckstein performed a consultative psychological evaluation of Waderich on May 31, 2005. Tr. 503-09. That evaluation included a clinical interview and mental status examination. As activities of daily living, Waderich reported that she lived with her mother and her son, could drive, and recently had done house-sitting for her daughter. Tr. 505. Her mother generally cooks for the household, and Waderich does other household chores slowly, trading responsibilities with her mother and son. *Id.* Waderich also reported that she attends to her personal hygiene, pays for a storage unit, and was not in a significant relationship, but knows

many people and has one best friend.  Tr. 505-06.  Dr. Eckstein also noted Waderich's feeling of

depression from living in her mother's home, rather than having a home of her own.  Tr. 506.

Dr. Eckstein also performed intelligence and personality tests.  Waderich achieved a full-

scale IQ score of 68 on these tests which Dr. Eckstein interpreted as "Borderline to Extremely

Low range of intellectual functioning, suggesting that she would have quite a bit of difficulty

working in a competitive employment situation."  Tr. 507.  Dr. Eckstein summarized Waderich's

personality test results as follows:

> The validity indicies of Ms. Waderich's [personality test] results
> indicate that she took the test in a generally valid manner,
> responding appropriately and consistently to the content of test
> items.  However, her response patterns are unusual in that they
> suggest a defensiveness about particular personal shortcomings as
> well as an exaggeration of certain problems.  Thus, there may be a
> level of distortion in which clinical scale evaluations over
> represent the extent or degree of symptomology in certain areas.

*Id.*

As a result, Dr. Eckstein added that Waderich's test results should be "taken with this

caution in mind."  *Id.*  Dr. Eckstein diagnosed Waderich with dysthymia, sporadic cannabis

abuse, and mild mental retardation.  Tr. 509.

The ALJ found Dr. Eckstein's test results inconsistent with previous cognitive testing

conducted in 2003.  Tr. 26-27.  The ALJ also concluded that Waderich's reports of her daily

activities to Dr. Eckstein "are not indicative of an individual with significant deficits in the areas

of adaptive functioning, and are inconsistent with mental retardation."  Tr. 27.

The record supports the ALJ's finding that the evidence shows that Waderich functions at

a higher level than that of "mild mental retardation" as assessed by Dr. Eckstein.  Cognitive

ability testing conducted in October 2003 by a Learning Disabilities Evaluator, Kathryn Phillips,

7 - OPINION AND ORDER

M.A., suggested that Waderich's functions in the "low average range." Tr. 182.  She found

Waderich's academic achievement was  equivalent to "the mid fourth grade range," but also

noted that Waderich "has the ability to perform daily living tasks.  She has relative strengths in

oral language and is able to follow directions and learn new concepts." Tr. 183, 184.  As a

learning specialist, Phillips is an educational "other" source, rather than an acceptable medical

source, under the Commissioner's regulations.  20 CFR § 416.913(d)(2).  Nevertheless, the ALJ

may consider opinions rendered by such non-medical sources in assessing the severity of a

claimant's impairment.  *Id.*

      The ALJ also found Waderich's own  reports of her activities of daily living inconsistent

with Dr. Eckstein's finding that Waderich is mildly mentally retarded.  Here the ALJ noted

Waderich's reports of performing chores slowly, house-sitting, independently shopping, and

paying for a storage unit.  Tr. 27.  Because Waderich made these reports to Dr. Eckstein, the

ALJ's analysis is based upon the record.

      For these reasons, the ALJ's finding that the 2003 cognitive ability testing and

Waderich's activities together suggested that Waderich functions at a greater level than assessed

by Dr. Eckstein is based upon the record.

### 2.    Medical Expert Dr. Peters

      A medical expert, Dr. Peters, a psychologist, testified at Waderich's second hearing on

November 13, 2006.  Tr. 733-43.  Dr. Peters first discussed Dr. Eckstein's report that Waderich

had a full-scale IQ of 68 and mild mental retardation.  Tr. 735.  Dr. Peters testified that he did

not see any indication in the records or in Waderich's testimony that her activities of daily living

were limited to the extent associated with mental retardation, and concluded that she retains

borderline intellectual and adaptive functioning. *Id.* Dr. Peters additionally opined that Waderich's cannabis use could effect mental status test results. Tr. 736-38. He concluded that Waderich had mild, rather than marked, impairments in social functioning. Tr. 739. Finally, Dr. Peters opined that Waderich did not meet any Listing promulgated by the Commissioner. Tr. 739-40.

The ALJ found Dr. Peters's opinion "consistent with the evidence," without directly identifying what evidence he found consistent. Tr. 28. However, Dr. Peters's opinion that Waderich retains borderline intellectual and adaptive functioning is consistent with Phillips's test results and Waderich's own reports of her functioning to Dr. Eckstein discussed above. The record thus supports the ALJ's finding that Dr. Peters's opinion is consistent with other evidence in the record.

In summary, the ALJ properly rejected Dr. Eckstein's opinion that Waderich is mildly mentally retarded. Contrary to Waderich's assertion, the ALJ did not directly rely upon Dr. Peters's opinion in rejecting Dr. Eckstein's opinion. Instead, the ALJ rejected Dr. Eckstein's opinion because it contradicted other evidence in the record and accepted Dr. Peters's opinion because it was consistent with that evidence.

### C.    Treating Physician Dr. McRee

Waderich also contends that the ALJ did not give clear and convincing reasons for rejecting the opinion of her treating physician, Dr. McRee, who restricted Waderich to sedentary work. Tr. 611-13, 747-48.

///

///

9 - OPINION AND ORDER

1.    **Dr. McRee's Opinion**

Dr. McRee treated Waderich on three occasions between May 24 and July 19, 2006.

Tr. 604-08.  On May 24, 2006, Dr. McRee assessed her as having COPD, gastroesophageal

reflux disease ("GERD"), chronic pain, depression, and hyperlipidemia.  Tr. 608.  On July 13,

2006, she also assessed COPD, major depression and anxiety, and a history of hyperlipidemia.

Tr. 606.  And on July 19, 2006, she again assessed a history of COPD, hyperlipidemia, chronic

back pain, and depression.  Tr. 604.  Dr. McRee initially stated on May 24, 2006, that she did not

have Waderich's previous treatment records and hoped to receive them.  Tr. 608.  However, the

record does not indicate that she received or reviewed these records, and contains a notation on

July 19, 2006, that Dr. McRee did not have some previous records.  Tr. 605.

Dr. McRee also completed a medical source statement on November 1, 2006.  Tr. 611-

13.  She restricted Waderich to lifting less than 10 pounds, endorsing that Waderich may stand

"at least two hours in an 8-hour workday" and must periodically alternate sitting and standing.

Tr. 611-12.  Dr. McRee also endorsed limitations in Waderich's ability to push and pull.  Tr.

612.  However, next to this limitation she wrote "have not assessed," which she then crossed out

and annotated as "error."  *Id.*

The ALJ did not give Dr. McRee's limitations significant weight.  Tr. 34.  In that regard,

the ALJ noted Dr. McRee's "error" annotation regarding Waderich's ability to push and pull.  *Id*.

The ALJ also stated that Dr. McRee relied upon Waderich's own reports in assessing her

limitations.  Tr. 35.  Next, the ALJ found that Dr. McRee's opinion was not supported by her

own notes and that her treating relationship with Waderich extended to three visits and a final

examination.  Tr. 35.  Finally, the ALJ noted that disability opinions are reserved for the

Commissioner.  *Id.*

2.    **Analysis**

The ALJ may reject physician opinions predicated upon reports of a claimant deemed not

credible.  *Tonapetyan v. Halter*, 242 F3d 1144, 1149 (9th Cir 2001).  The record does not show

that Dr. McRee performed examinations regarding Waderich's back pain.  Tr. 604-07.  Instead,

in response to Waderich's report of chronic pain and at her request, Dr. McRee agreed to

increase the pain medication on July 19, 2006.  Tr. 616.  Thus, the ALJ's finding that Dr. McRee

relied upon Waderich's reports is based upon the record.  Because Waderich does not challenge

the ALJ's credibility finding, her self-reports to Dr. McRee cannot be relied upon to overturn the

ALJ's finding.

The ALJ may also consider the length and duration of a treatment relationship in

assessing a treating physician's opinion.  20 CFR § 416.927(d)(2)(i).  The record supports the

ALJ's finding that Dr. McRee treated Waderich on only three occasions.  Tr. 604-08.

Finally, the ALJ may reject physician opinions unsupported by clinical notes or findings.

*Bayliss v. Barnhart*, 427 F3d at 1216.  The record supports the ALJ's finding that Dr. McRee's

notes did not support her indicated limitations.  Dr. McRee noted Waderich's reports of chronic

pain, but made no findings or functional assessments of work-related limitations.  Waderich

suggests that a previous x-ray of her spine supports Dr. McRee's opinion.  The record does not

reveal that Dr. McRee viewed this evidence, and Dr. McRee did not cite this evidence in

supporting her opinion.  Thus, this suggestion fails to establish that Dr. McRee's opinion is

properly supported by her own notes.  To the contrary, the record supports the ALJ's finding that

Dr. McRee's opinion is unsupported by her notes.

For all of these reasons, the ALJ's findings regarding Dr. McRee are based upon the

record and the appropriate legal standards.

In summary, the ALJ's findings regarding the opinions of Drs. Eckstein, Peters, and

McRee are supported by the record and based upon the correct legal standards.

## II.    Step Three Findings

Waderich contends that she meets Listing 12.05C in the Commissioner's regulations.

Listing 12.05 defines mental retardation as "significantly subaverage general intellectual

functioning with deficits in adaptive functioning initially manifested during the developmental

period; *i.e.* the evidence demonstrates or supports onset of the impairment before age 22."

20 CFR Pt. 404, Suppt. P, App. 1 § 12.05.   Listing 12.05C specifically addresses mental

retardation where an individual has a full-scale IQ between 60 and 70 and a "physical or mental

impairment imposing an additional and significant work-related limitation of function."  20 CFR

Pt. 404, Suppt. P, App. 1 § 12.05C.  Onset of this impairment must still occur before age 22.  *Id.*

Waderich does not point to the onset of her IQ score before age 22.  Instead, she argues at

length that she has had deficits in adaptive functioning since childhood.  In support, she cites her

own reports to Dr. Eckstein and testimony regarding her current level of functioning in that she

does not go out socially, has repeatedly violated parole, and has not been able to sustain

competitive work.  Tr. 504-05, 710-11.  This testimony does not establish Waderich's

functioning prior to age 22.  Before age 22, Waderich reports only that she got marginal grades

in school and did not earn her GED.  *Id.*  However, she also admits that she was not placed in

special education classes and dropped out of seventh grade due to pregnancy.  Tr. 627, 710-11.

Furthermore, as previously noted, Waderich does not challenge the ALJ's decision that she lacks

credibility.  Accordingly, this court may not rely upon Waderich's self-reports to Dr. Eckstein as

a reason to overturn the ALJ's finding.

Therefore, Waderich fails to show that her alleged impairment is equivalent to Listing

12.05C and began before age 22.  The ALJ's finding that Waderich does not meet Listing

12.05C, as well as other listed disorders, is based upon the correct legal standard.  Because

Waderich does not meet the first prong of Listing 12.05C, her additional arguments regarding the

listing need not be considered.

## III.    <u>Step Five Findings</u>

Finally, Waderich contends that the Commissioner erroneously found at step five that she

may perform work in the national economy.

In making a step five finding which includes non-exertional limitations, the ALJ is

required to propound a hypothetical to a vocational expert.  *Tackett*, 180 F3d at 1101-02.  This

hypothetical must be "based on medical assumptions supported by substantial evidence in the

record that reflects all of the claimant's limitations."  *Osenbrock v. Apfel*, 240 F3d 1157, 1165

(9th Cir 2001).

The vocational expert testified that an individual with Waderich's RFC could perform

work as an assembler and cashier.  Tr. 745-46.  The ALJ relied upon this testimony in finding at

step five that Waderich could perform work in the national economy.  Tr. 39.  Waderich

contends that this finding is flawed because she meets Listing 12.05C and because Dr. McRee

limited her

to sedentary work.  These arguments are rejected for the reasons discussed above.  Waderich

therefore fails to show error in the ALJ's step five finding.

### **ORDER**

The Commissioner's decision that Waderich did not suffer from disability and is not

entitled to SSI under Title XVI of the Social Security Act is based upon correct legal standards

and supported by substantial evidence.  The Commissioner's decision is AFFIRMED and the

case is dismissed.

DATED this 4th day of June, 2009.

s/  Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge